## MARY A. SACKNER v. JOHN SACKNER.

*Mortgage set aside for lack of obligation.*

A man caused land which he had paid for to be deeded to his son. The son conveyed it to his wife by a voluntary conveyance, but without his father's knowledge, and a homestead was created which absorbed about half the purchase money. The father afterwards induced her to mortgage it to him in order that one of the son's creditors might be forced to make better terms. The mortgage was not intended as a genuine security for a real or supposed debt. When the daughter-in-law asked that it be discharged, the father-in-law refused on the ground that it gave him an advantage. *Held* that a mortgage cannot be maintained without an obligation capable of proof, and a bill filed by the daughter-in-law to set aside her mortgage was allowed.

Appeal from Genesee. Submitted June 6. Decided June 11.

BILL TO SET ASIDE MORTGAGE. Defendant appeals.

*J. L. Topping* and *A. C. Baldwin* for complainant.

*T. G. Smith* and *Theodore Romeyn* for defendant.

CAMPBELL, C. J. Complainant, who is daughter-in-law of defendant John Sackner, seeks to set aside a mortgage which he holds against her homestead of $1800 and interest from July 28, 1871. Her claim is in brief that it was obtained from her by the mortgagee to facilitate a settlement with one of her husband's creditors, and given by her on the representation that her homestead right being but $1500, if she gave a mortgage of the amount in question, there would be nothing on which a creditor could levy. As a matter of fact the conveyance by her husband had been a voluntary one, although it is not clear that the creditor in question could have assailed it. She claims that the mortgagee agreed to release it when desired, and that after it was

given, a further security was given to another mortgagee for a loan, which the lender was assured was a first mortgage, on the faith that the mortgage now in controversy was not in force. Upon an attempt to make a second loan some time thereafter, complainant discovered that although as she avers defendant had promised to discharge the mortgage, he had not, and broke off the negotiation. Defendant, when afterwards urged to discharge it, refused.

His defense is that he paid for the homestead himself when purchased in 1868, and had the deed made to his son Samuel, complainant's husband, with an understanding that he should have a lien for the purchase money, and that it should be paid in five years. That the son conveyed to the wife without his knowledge, and on discovering this, and regarding it as a fraud, he insisted on having and obtained this mortgage for the value not covered by the statutory homestead right of $1500.

There is unfortunately a direct conflict of evidence on important points. The court below found for complainant. We cannot properly disturb this decree without being satisfied that it is erroneous.

Inasmuch as a mortgage cannot be maintained without an obligation capable of proof, and inasmuch as this mortgage can only be maintained on defendant's theory, we are not compelled to consider the facts at length concerning some collateral inquiries.

It is not disputed that defendant did furnish most of the purchase money of the farm. There is some testimony bearing on an intention to hold Samuel Sackner as owing it to his father. But it is quite clear that no security was asked or taken; that no principal or interest was ever paid or demanded; that a homestead was created which would absorb about half of the purchase money, and that nothing was said about the matter until after the conveyance to Mrs. Sackner. This conveyance was, beyond any question, made to her when

her husband was about going into a new business which involved some risks, and was honestly designed to save the family from loss. Defendant, when he discovered it, was undoubtedly offended. It is evident he had the not unnatural feeling that he would not have put the property at his own expense in his daughter-in-law's hands and beyond control of his son, and that his original purpose had been disappointed. But while he claims that he obtained this mortgage to secure him for the advances which he had made, we are quite clear that if the property had been left in the son's name no claim of the sort would have been heard of. That defendant had a purpose when he took it, of doing so to obtain a species of control over the property, is plain enough. But we think the story of complainant that it was obtained with the ostensible design of inducing a creditor to made better terms, without any design of holding it as a valid security, is most in harmony with the circumstances. The papers were not given up to the mortgagee, but were retained by the mortgagor at the time and for some time thereafter, and it is perfectly evident that both complainant and her husband supposed the property unincumbered and so dealt with it. It is just as plain that defendant never set up any rights under it and made no demands under it, until complainant made an urgent request for its discharge of record, when his refusal was put rather on the ground that he had the advantage, than that he had any rightful claim, and was maintained on account of family difficulties. It is impossible to account for complainant's demand of release except upon the supposition at least of a right to it. The testimony concerning the terms and circumstances of that demand is in our view in accordance with her theory and not as defendant sets it up.

While we can readily see how defendant may have persuaded himself that he ought to have some control over his bounty to his son, we have become satisfied

that he never retained any beyond the natural influence which he evidently possessed and exercised. But we think, with the court below, that this mortgage was not intended as a genuine security for an actual or supposed debt.

The decree must be affirmed with costs.

The other Justices concurred.